**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ***GRANT SIDNEY, Inc.,***<br>***FAWN WEAVER AND***<br>***KEITH WEAVER***<br><br>**Appellants,**<br><br>**v.**<br><br>***FARM CREDIT MID-AMERICA, PCA,***<br><br>**Appellee.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **DKT. NO. 26-5492** |

**EMERGENCY MOTION TO STAY PORTIONS OF THE DISTRICT COURT'S MAY 12, 2026 ORDER (DKT. ENT. 197) AND MAY 26, 2026 ORDER (DKT. 198) PENDING APPEAL**

COMES NOW, Appellants Fawn Weaver, Keith Weaver, and Grant Sidney, Inc. ("Appellants"), and respectfully move pursuant to Fed.R.App.P.8(a) for a stay of portions of the District Court's May 12, 2026 Order (Dkt. 197) and May 26, 2026 Order (Dkt. 198) pending appeal.

Appellants do not seek to stay the receivership in its entirety, but only those portions of the Orders that expand the receivership to Grant Sidney, Inc. ("Grant Sidney") and authorize asset sales that may impair meaningful appellate review.

1. An immediate administrative stay pending this Court's consideration of this Motion;

2. An immediate stay pending appeal of those portions of the District Court's May 26, 2026 Order (Dkt. 198) expanding the receivership to Grant Sidney.

3. An immediate stay pending appeal of those portions of the District Court's May 12, 2026 Order directing publication, overbid procedures, and a June 11, 2026 hearing on the Receiver's proposed sale of the Martha's Vineyard property, and any further receivership asset-sale activities pending appeal; and

4. Such further relief as may be necessary to preserve the *status quo* and ensure the availability of meaningful appellate review.

## INTRODUCTION

Appellants, Fawn Weaver, Keith Weaver and Grant Sidney, seek a stay of portions of two District Court Orders pending appeal pursuant to Fed. R. App. P. 8(a) and the interlocutory appellate-jurisdiction provisions in 28 U.S.C. § 1292(a)(2). The Orders are as follows:

1. The portions of the May 26, 2026 Order (Dkt. 198) expanding the receivership to Grant Sidney; and

2. The portions of the May 12, 2026 Order (Dkt. 197) directing publication, overbid procedures, and a hearing on the Receiver's proposed sale of the Martha's Vineyard property, and any further receivership asset-sale activities pending appeal.

Appellants believe a brief recitation of the parties will assist the Court. Fawn Weaver and Keith Weaver are the creators of Uncle Nearest, Inc. ("Uncle Nearest"), a Delaware corporation engaged in the production, marketing, and distribution of premium spirits. Grant Sidney, Inc. is a California holding company and an Appellant in this matter. Uncle Nearest operates an international brand and maintains assets that include inventory, intellectual property, and ongoing business operation. Uncle Nearest received a loan from Farm Credit Mid-America, PCA ("Farm Credit") during the operation of the business under the stewardship of Fawn Weaver, the founder and controlling shareholder of Uncle Nearest.

On July 28, 2025, Farm Credit filed a breach-of-contract lawsuit against Fawn Weaver, Keith Weaver, Uncle Nearest, Inc., Nearest Green Distillery, Inc., and Uncle Nearest Real Estate Holdings, LLC.[1] Simultaneously with the filing of the litigation, Farm Credit moved for the appointment of a receiver over the collateral of Uncle Nearest, Inc., Nearest Green Distillery, Inc., and related entities. This motion was ultimately granted on August 22, 2025, in the District Court, Eastern Division, before any discovery had been obtained[2] and over the objections of the Weavers and the Board of Directors of the Uncle Nearest. However, the

[1] *See,* Case No. 4:25-cv-00038-CEA-CHS, *Farm Credit Mid-America, PCA v. Uncle Nearest, Inc. et al*

[2] *See*, ECF No. 39, Order Appointing Receiver.

Receivership Order did not expressly address whether Uncle Nearest's Board of Directors retained authority to commence a bankruptcy proceeding.

On March 19, 2026, the Uncle Nearest filed a voluntary petition for relief under Chapter 11 in the United States Bankruptcy Court for the Eastern District of Tennessee. Shortly after the petition was filed, the Receiver moved to dismiss the case, asserting that the Receivership Order exclusively granted authority to the Receiver to file a bankruptcy petition. No discovery was conducted, no evidentiary record was developed, and no creditors were heard. The bankruptcy court concluded, based solely on its interpretation of the Receivership Order, that the Receiver alone possessed authority to commence a bankruptcy proceeding on behalf of Uncle Nearest and dismissed the bankruptcy.

Litigation continued in the District Court between the parties listed above until the District Court issued the Orders that necessitate this Emergency Motion. First, the Order of May 12, 2026 initiates the court-directed process for disposing of unique real and personal property in Martha's Vineyard on an expedited schedule. Absent a stay, Appellants will suffer harms that cannot be fully undone on appeal, including continued displacement from control of business affairs and the risk that the sale of the Martha's Vineyard property and other receivership assets will moot or substantially impair effective appellate relief.

Thereafter, on May 26, 2026, the Court also filed a lengthy (62) sixty-two page Order on the Motion to Reconsider the Memorandum Opinion and Order (See, Dkt. Ent. 32), the Order Appointing Receiver ( See, Dkt. 39) and to Stay Access to Proprietary Information. (See, Dkt. Ent. 91). Moreover, the Court ruled on the Motion for Clarification of Receivership Order (See, Doc. 41) which the Court construed as a motion to **expand** the receivership, and which was GRANTED IN PART and DENIED WITHOUT PREJUDICE IN PART. Specifically, the Motion was granted as to Grant Sidney, which is now included in the receivership estate.

This Emergency Motion seeks only to preserve the *status quo* while this Appellate Court reviews the (2) two orders referenced above from the immediate and potentially irreversible consequences. These Orders and their inevitable impact on the Appellants cannot be denied and has forced the Appellant to seek redress from this Court on an emergency basis. Because the Order of May 12, 2026 sets a compressed schedule for publication, overbids, a compliance reporting, and a June 11, 2026 hearing, engenders this request for an immediate administrative stay to preserve the *status quo* while the panel considers the stay motion.

As stated above, this case is part of ongoing litigation that originated in bankruptcy court involving these same parties in interest. On March 17, 2026, Uncle Nearest Inc., filed a voluntary petition for relief under Chapter 11 of the

Bankruptcy Code.[3]On March 18, 2026, the Receiver filed a motion to dismiss the case.[4] Thereafter, on March 19, 2026, the bankruptcy court conducted an expedited hearing on the motion and entered an order granting dismissal of the case within *one day* of the Receiver's filing, both from the bench and by written order.[5] [6]

On March 20, 2026, the Uncle Nearest filed a Notice of Appeal.[7]

On March 23, 2026, after the Notice of Appeal had been filed, the bankruptcy court entered a Supplemental Memorandum Opinion setting forth its findings of fact and conclusions of law.[8]

The Appellants moved the District Court to allow the Appellant's interlocutory appeal and as it is an appeal from bankruptcy court the ability to appeal to the Sixth Circuit requires the District Court's permission to do so. At this writing, the District Court has not ruled on the Motion for Emergency Appeal making the probability of harm greater at each passing day.  This Court has the authority to grant a stay pending appeal under Fed. R. App, Pro. 8(a)(2). As mentioned *supra*, the Appellants sought relief in the form of an interlocutory appeal in the District Court on the dismissal of the bankruptcy of Uncle Nearest,

[3] Voluntary Petition, Bankr. Dkt. No. 1 (Mar. 17, 2026).
[4] Receiver's Motion to Dismiss, Bankr. Dkt. No. 8 (Mar. 18, 2026).
[5] Mar. 19, 2026, Hearing Tr., at pg. 47 lines 13-19.
[6] Order Granting Motion to Dismiss, Bankr. Dkt. No. 48 (Mar. 19, 2026).
[7] Notice of Appeal, Bankr. Dkt. No. 49 (Mar. 20, 2026).
[8] Supplemental Mem. Op., Bankr. Dkt. No. 72 (Mar. 23, 2026).

Inc., two (2) months ago and to date there is no ruling on this request. The current request of Fawn Weaver, Keith Weaver and Grant Sidney, is the first appeal in this forum and is an appeal as of right from a final Order.

The sale order requires immediate publication, sets a June 5, 2026 overbid deadline, a June 9, 2026 report deadline, and a June 11, 2026 hearing, creating a compressed schedule under which meaningful appellate relief could be lost before the district court could act.

Since the filing of the Orders at issue, the Receiver has also disclosed that he has entered into a signed Letter of Intent for the sale of substantially all assets of Uncle Nearest, Inc., Uncle Nearest Real Estate Holdings, Inc., and Nearest Green Distillery, Inc., and anticipates execution of a formal Asset Purchase Agreement within approximately forty-five (45) days. The pace of these developments further underscores the need to preserve the status quo pending appellate review, as the transfer of assets to third parties may substantially impair this Court's ability to afford meaningful relief should Appellants prevail on appeal.

The challenged May 26, 2026 Order likewise expands the receivership to Grant Sidney, and permits continued receivership control during the same period. Fed. R. App. P. 8(a)(2)(A)(i).

## II. APPELLATE JURISDICTION

This Court has interlocutory appellate jurisdiction under 28 U.S.C. § 1292(a)(2), which authorizes appeals from interlocutory orders appointing receivers, refusing to wind up receiverships, and taking steps to accomplish receivership purposes, including directing sales or other disposals of property. In the alternative, to the extent any component of the challenged orders is injunctive in operation, jurisdiction also exists under 28 U.S.C. § 1292(a)(1).

Under Rule 8 of the Federal Rules of Appellate Procedure, [a] party must ordinarily move first in the district court for an injunction pending appeal. This is [t]he cardinal principle of stay applications. *Baker v. Adams Cnty./Ohio Valley Sch. Bd.*, 310 F.3d 927, 930 (6th Cir. 2002) (per curiam) (alterations in original) (first quoting Fed. R. App. P. 8(a)(1)(C); and then 16A Wright, Miller, & Cooper, Federal Practice and Procedure § 3954 (3d ed. 1999)). Appellants in this case can demonstrate that moving first in the district court would be impracticable. Fed. R. App. P. 8(a)(2)(A)(i).

First, the District Court has denied stay-related relief requested in the Motion for Reconsideration filed by Appellants on December 23, 2025. That request remained pending for approximately five months before being resolved by the Court's May 26, 2026 Order. Therefore, a previous request for a partial stay of the effects of these orders has already been denied by the District Court. Given, the fact

that the District Court has set a date for a hearing on the sale of the Appellants' property for June 11, 2026, there is simply no time to present this application to the District Court.

Second, in related appeals from the dismissal of a chapter 11 bankruptcy petition, Uncle Nearest has filed an emergency motion to preserve the status quo (See *Uncle Nearest, Inc., et. al., v. Young,* Case No. 3:26-cv-00135, ECF No. 24)[9] which requests a stay of proceedings in this case. The Court has taken no action on that motion. Meanwhile, the Receiver has disclosed a signed Letter of Intent for the sale of substantially all assets of Uncle Nearest, Inc., Uncle Nearest Real Estate Holdings, Inc., and Nearest Green Distillery, Inc., with execution of a formal Asset Purchase Agreement anticipated within approximately forty-five (45) days. Therefore, given that these matters remain pending without decision while asset-sale activities continue to advance, further applications would be futile.

Based upon the foregoing, the Appellants respectfully submits that moving first in the district court would be impracticable. The challenged Orders have already set in motion an expedited sales process that will begin on June 11, 2026, and absent immediate relief, Appellants will suffer irreparable harm before the district court could reasonably hear and decide an emergency stay motion. Given the short time

[9] Identical motions have been filed in Case No. 3:26-cv-00135 and 3:26-cv-00136, which are companion cases which have not yet been consolidated.

frame, the nature of the threatened harm, and the need for prompt appellate review, district-court relief is not realistically available in time to prevent the injury.

## III. RELEVANT DISTRICT COURT ORDERS

a. Order Expanding the Receivership to Grant Sidney.

On May 26, 2026, the district court denied Grant Sidney's motion to reconsider the receivership-related rulings and expanded the receivership to include Grant Sidney, a separate holding company. The court's order expanded the receivership to include Grant Sidney, thereby subjecting Grant Sidney to ongoing receivership control pending appeal.

b. Order directing sale procedures for the Martha's Vineyard Property

On May 12, 2026, the district court entered an order under 28 U.S.C. § 2001(b) directing publication of notice, setting overbid procedures, requiring a receiver's report, and setting a June 11, 2026 hearing on the Receiver's proposed sale of the Martha's Vineyard property and associated personal property.

## IV. STATEMENT OF ISSUES PRESENTED

1. Whether appellants are entitled to a stay pending appeal under Fed. R. App. P. 8(a) where the appeal presents at least serious questions as to whether the district court abused its discretion by continuing or refusing to revisit an extraordinary federal equity receivership and by expanding the receivership to include Grant Sidney.

2. Whether appellants will suffer irreparable harm absent a stay because continued receivership control, the expansion of the receivership to Grant Sidney, and ongoing asset-sale activities inflict noncompensable injury that cannot be fully remedied on appeal.

3. Whether appellants will suffer irreparable harm absent a stay of the Martha's Vineyard sale procedures and other receivership asset-sale activities because the challenged Orders set in motion an expedited process toward asset dispositions that may result in practical mootness and irreversible changes before appellate review.

4. Whether the balance of harms and the public interest favor a stay where temporary relief would preserve the status quo, protect this Court's ability to grant effective relief, and impose only delay-related harm on the Receiver and opposing parties.

## V. STANDARD FOR A STAY PENDING APPEAL

A stay pending appeal is governed by the familiar four-factor test:

(1) likelihood of success on the merits;

(2) irreparable injury absent a stay;

(3) substantial injury to other parties if a stay issues; and

(4) the public interest.

*See, Serv. Emps. Int'l Union Loc. 1 v. Husted*, 698 F.3d 341, 343 (6th Cir. 2012) (internal quotations omitted); *see also, Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153-54 (6th Cir. 1991). These factors

are interrelated and must be balanced. A movant need not show certainty of success but must show at least serious questions going to the merits. *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153-54 (6th Cir. 1991).

A district court "necessarily abuses its discretion when it commits an error of law." *S. Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 854 (6th Cir. 2017). And the court's determination as to likelihood of success is a legal conclusion that is reviewed de novo. *Fowler*, 924 F.3d at 256.

Appellants will address each of the four factors below.

## VI. **ARGUMENT**

### A. APPELLANTS ARE LIKELY TO SUCCEED ON THE MERITS.

Appellants are likely to succeed on the merits because the Expansion Order extends an extraordinary equitable remedy beyond traditional limits and rests on factual inferences contradicted by the record before the district court. The Order places Grant Sidney, Inc. ("GSI"), a separate non-operating California holding company, into receivership despite the absence of completed findings establishing fraud by GSI, alter-ego conduct, operational unity, misuse of corporate form, concealment of assets, or imminent dissipation. Most importantly, the Expansion Order expands receivership control first and directs investigation later. Under settled

principles governing federal receiverships, corporate separateness, clear-error review, and equitable restraint, Appellants have demonstrated a substantial likelihood of success on appeal.

Although district courts ordinarily receive deference regarding factual determinations, the Supreme Court has cautioned:

> This is not to suggest that the trial judge may insulate his findings from review by denominating them credibility determinations.... Documents or objective evidence may contradict the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it. Where such factors are present, the court of appeals may well find clear error even in a finding purportedly based on a credibility determination.
>
> *Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985).

That principle applies here. The Expansion Order relies heavily on adverse credibility findings while discounting objective records showing GSI's separate existence, the traceability of the MP-Tenn funds, and the absence of any retained proceeds by GSI or Ms. Weaver.

The most significant merits issue is apparent from the Expansion Order itself: the receivership was expanded before the court required the Receiver to complete the investigation necessary to determine whether GSI actually held receivership assets or whether less drastic remedies would suffice. The court ordered:

> "The Receiver is DIRECTED to promptly investigate whether and to what extent Grant Sidney, Inc. holds any assets that rightly belong to Uncle Nearest, Inc., Nearest Green Distillery, Inc., Uncle Nearest Real Estate Holdings, LLC, or any of the

> 'Subject Entities' as that term is defined in Paragraph 2 of the Order Appointing Receiver."
>
> Expansion Order, Doc. 198, PageID #7814–7815.

The court further ordered:

> "This report SHALL also state the Receiver's position on whether Grant Sidney, Inc. should remain in receivership or whether other less drastic measures could be used to recover any improperly diverted assets."
>
> Id., Page ID #7815.

Thus, the district court did not first find that GSI actually possessed receivership assets and that less drastic remedies were inadequate. It expanded the receivership and then directed the Receiver to investigate those questions within sixty days. Id., Page ID #7814–7815. That sequence presents a substantial appellate question regarding necessity, proportionality, and the traditional limits of equitable relief.

The record before the district court also showed that GSI was not an operating affiliate created to evade Farm Credit or conceal receivership assets. GSI presented evidence that it was formed in California in 2013, approximately three years before Uncle Nearest, Inc. was created, and that it maintained separate corporate existence, separate tax reporting, separate financial records, and separate corporate books. Grant Sidney Supplemental Brief, Doc. 160, Page ID #6807–6811; Weaver Decl., Doc. 160-1, Page ID #6829–6832. The district court itself recognized that "Grant Sidney, Inc. is a California corporation whose sole shareholder is Fawn Weaver,"

and that GSI is "a holding company" owning approximately 30% of Uncle Nearest. Expansion Order, Doc. 198, PageID #7804–7805. The court further acknowledged that GSI is a "passive holding and investment entity" and "does not have operations the receivership might disrupt." Id., Page ID #7807.

The documentary record also materially undermines the Expansion Order's treatment of the MP-Tenn transaction. GSI presented evidence that the February–April 2025 capital infusion was documented through written approvals, a note purchase agreement, two convertible promissory notes, and a related side letter. Weaver Decl., Doc. 160-1, PageID #6832–6834. GSI further showed that the funds were received into a dedicated Uncle Nearest money-market account, temporarily routed through a GSI account, and disbursed to Uncle Nearest operating accounts, payroll vendors, packaging vendors, and other vendor obligations. Grant Sidney Supplemental Brief, Doc. 160, PageID #6808–6814; Weaver Decl., Doc. 160-1, PageID #6833–6835. GSI also presented evidence that "[n]o funds—principal or accrued interest—were retained by Grant Sidney or by [Ms. Weaver] personally," and that there were no transactions between GSI and Uncle Nearest before February 2025 or after April 2025. Weaver Decl., Doc. 160-1, PageID #6835.

The objective records supported that account. Schedule 1.1 to the Subordinated Credit Agreement identified GSI as "Lender," listed an initial term loan commitment of $20,026,270.00, and itemized the funding dates and amounts.

Doc. 160-1, PageID #6898–6899. The reconciliation exhibit then matched the actual disbursements to the amounts listed in the Subordinated Credit Agreement / Forbearance Agreement. Doc. 160-2, PageID #6970. Those records included payments to Uncle Nearest, Inc., Genesis Global, Berlin Packaging, Marabou, Domaine D'Anatole, S1 Organic Vodka, and other operating counterparties. Id.

The district court acknowledged that "it appears that, at least on the current record, the funds diverted to Grant Sidney flowed back to Uncle Nearest." Expansion Order, Doc. 198, PageID #7784. The court similarly recognized that "it appears the MP-Tenn funds were ultimately spent for Uncle Nearest's benefit." Id., PageID #7805. Thus, even under the district court's own findings, the challenged funds were not found missing, dissipated, or retained by GSI.

The Expansion Order also cites Ms. Weaver's purported "shift in testimony" regarding the barrel issue as a basis for questioning her credibility. The cited footnote states:

> This shift in testimony is another example of why the Court does not find Fawn Weaver credible.
>
> Expansion Order, Doc. 198, PageID #7796.

But Ms. Weaver never previously testified on that issue, and her written submissions and testimony have remained consistent throughout the proceedings. In any event, that barrel-related credibility finding does not supply evidence that GSI

engaged in alter-ego conduct, concealed assets, dissipated property, or misused the corporate form.

The legal deficiencies are equally substantial. As the Supreme Court explained in *Gordon v. Washington*, 295 U.S. 30 (1935):

> It should also have determined whether, in accordance with the accepted principles of equity, any state of facts was presented to it which called for the exercise of its extraordinary powers as a court of equity.
>
> Id. at 36.

The Court further emphasized:

> A receivership is only a means to reach some legitimate end sought through the exercise of the power of a court of equity. It is not an end in itself.
>
> Id. at 37.

And even where equitable jurisdiction otherwise exists:

> the summary remedy by receivership, with the attendant burdensome expense, should be resorted to only on a plain showing of some threatened loss or injury to the property, which the receivership would avoid.
>
> Id. at 39.

The Supreme Court has likewise cautioned that federal equitable authority is not unlimited. In *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), the Court explained:

> "Although equity is flexible, in the federal system, at least, that flexibility is confined within the broad boundaries of traditional equitable relief."
>
> Id. at 322.

The Sixth Circuit recently reaffirmed those same limits in the receivership context:

> Rule 66 thus directs courts to rely on traditional practice to determine the powers and limits of the receiver and receivership court. By doing so, the rule codifies the Supreme Court's repeated admonition that, absent legislative change, a federal court's exercise of its equitable powers must fall within the traditional principles of equity exercised by the High Court of Chancery in England at the founding.
>
> *Digital Media Solutions, LLC v. South University of Ohio, LLC*, 59 F.4th 772, 782 (6th Cir. 2023).

The Expansion Order is difficult to reconcile with those principles. The district court acknowledged that expansion of a receivership is "a drastic remedy" and declined to expand the receivership to six other entities because "the evidence currently in the record is insufficient to justify the drastic remedy of expanding the receivership to encompass these other entities." Expansion Order, Doc. 198, PageID #7814. Yet the same order expanded the receivership into GSI while simultaneously directing the Receiver to investigate whether GSI actually held assets belonging to the receivership estate and whether less drastic measures could suffice. Id., PageID #7814–7815.

The Expansion Order also conflicts with longstanding principles of corporate separateness. The Sixth Circuit has recognized:

> Absent some abuse of corporate form, courts honor this fiction by indulging a presumption—often referred to as the corporate veil—that the entity is separate and distinct from its owner or

> owners. Courts will honor this presumption even when a single individual owns and operates the entity.
>
> *Lim v. Miller Parking Co.*, 304 F. App'x 416, 424 (6th Cir. 2008).

Here, GSI presented evidence that it existed years before Uncle Nearest, maintained separate records and tax filings, had its own corporate identity, held passive investment interests, had no employees, no payroll, no recurring vendor obligations, and no operating revenues. Grant Sidney Supplemental Brief, Doc. 160, PageID #6809–6816; Weaver Decl., Doc. 160-1, PageID #6835–6839. The district court acknowledged that GSI is a passive holding and investment entity with no operations the receivership might disrupt. Expansion Order, Doc. 198, PageID #7807. The Receiver did not identify completed findings establishing that GSI was a sham, that it failed to observe corporate formalities, that it operated as Uncle Nearest's alter ego, or that it presently held assets belonging to the receivership estate.

At a minimum, Appellants have demonstrated serious questions regarding both the factual and legal foundations of the Expansion Order. The record contains objective documentation supporting GSI's separate corporate existence and tracing the MP-Tenn funds to Uncle Nearest's benefit. The district court acknowledged that "the funds diverted to Grant Sidney flowed back to Uncle Nearest," recognized that "the MP-Tenn funds were ultimately spent for Uncle Nearest's benefit," and described GSI as "a passive holding and investment entity." Expansion Order, Doc.

198, PageID #7784, #7805, #7807. Yet the court expanded the receivership before requiring the Receiver to determine whether GSI actually possessed receivership assets and before determining whether less drastic alternatives were available. Id., PageID #7814–7815. Because the Expansion Order rests on disputed inferences rather than completed findings of necessity, and because it extends receivership control beyond traditional equitable limits, Appellants are likely to succeed on appeal.

**B. APPELLANTS WILL SUFFER IRREPARABLE HARM ABSENT A STAY.**

Absent a stay, Appellants will suffer immediate and irreparable harm that cannot later be remedied through ordinary appellate review.

The receivership has already expanded beyond the original scope of the proceeding and now reaches entities, governance rights, litigation rights, restructuring interests, and business relationships extending far beyond the original collateral dispute. At the same time, significant receivership actions continue to advance, including proceedings relating to the proposed Martha's Vineyard property sale. Each day the Expansion Order remains in effect and receivership proceedings continue, the status quo shifts in ways that may become impossible to unwind if appellate relief is ultimately granted.

The Sixth Circuit has emphasized that the stay factors "are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). Likewise, the Sixth Circuit has explained:

> In applying this test, we balance the factors. The Appellant must demonstrate a likelihood of success on the merits to a degree inversely proportional to the amount of irreparable harm that will be suffered if a stay does not issue. '[I]n order to justify a stay of the district court's ruling, the [Appellant] must demonstrate at least serious questions going to the merits and irreparable harm that decidedly outweighs the harm that will be inflicted on others if a stay is granted.'
>
> *Family Trust Foundation of Kentucky, Inc. v. Kentucky Judicial Conduct Commission*, 388 F.3d 224, 227 (6th Cir. 2004).

That standard is satisfied here.

The harm to Appellants is not merely monetary. The Expansion Order presently interferes with governance rights, restructuring opportunities, litigation autonomy, investor relationships, and bankruptcy-related protections in ways that cannot later be fully restored through damages.

GSI is a separate California holding company with addresses in Los Angeles and Atlanta. It has no employees, no operating business, and no actively managed operations. Its principal assets consist of illiquid ownership interests in Uncle Nearest and LS Creme Liqueur. The district court itself recognized that GSI is "a passive holding and investment entity" and "does not have operations the receivership might disrupt." Expansion Order, Doc. 198, PageID #7807. Yet the

Expansion Order subjects those assets and the governance rights associated with them to continuing receivership control despite the absence of completed findings establishing operational unity, alter-ego conduct, or fraudulent misuse of the corporate form.

The resulting harms include interference with separate corporate governance, impairment of restructuring opportunities, interference with investor and lender relationships, uncertainty concerning ownership and operational authority, and continued expansion of equitable control over entities and assets beyond the original receivership framework.

The irreparable harm is magnified because GSI is actively prosecuting independent litigation involving its own property, rights, and causes of action. GSI is a plaintiff in pending litigation against Farm Credit Mid-America, PCA. See *Fawn Weaver, Keith Weaver, and Grant Sidney, Inc. v. Farm Credit Mid-America, PCA*, Index No. 153219/2026 (N.Y. Sup. Ct., N.Y. County filed Mar. 13, 2026). GSI is also pursuing claims against former Chief Financial Officer Michael Senzaki and related parties for injuries allegedly suffered directly by GSI. Those actions seek recovery for direct injuries allegedly suffered by GSI itself and are not derivative claims asserted on behalf of Uncle Nearest. Continued expansion of the receivership into GSI therefore creates ongoing risks to litigation autonomy, attorney-client privilege, settlement authority, claim prosecution, and control of claims and assets

belonging exclusively to GSI. Once litigation decisions are made, strategic opportunities lost, settlement authority impaired, or privileged relationships altered, those injuries cannot be fully remedied after the fact.

These harms are especially acute because overlapping bankruptcy appellate proceedings remain pending. The bankruptcy appeal challenging the underlying authority and scope of the receivership remains unresolved while the district court continues altering the status quo through expansion of the receivership. Without a stay, the receivership may continue reshaping rights, relationships, governance structures, and receivership assets while overlapping appellate issues remain under review.

That creates a substantial risk that appellate review itself will become functionally meaningless.

The Sixth Circuit has recognized that denial of a stay may effectively extinguish appellate review. As the court explained:

> [A]n appeal must be dismissed as moot when, by virtue of intervening events, the court of appeals cannot fashion effective relief.
>
> *Weingarten Nostat, Inc. v. Service Merchandise Co.*, 396 F.3d 737, 742 (6th Cir. 2005).

Likewise, the Sixth Circuit has recognized that subsequent events may foreclose meaningful appellate review "regardless of the merits of legal arguments raised against it."

*In re Nashville Senior Living, LLC*, 620 F.3d 584, 591 (6th Cir. 2010).

The same concern exists here. If additional governance changes, restructuring interference, litigation interference, asset restraints, bankruptcy-related consequences, or sale-related consequences occur during the pendency of appeal—including consummation of the proposed Martha's Vineyard transaction—the Court of Appeals may later be unable to restore the parties to the positions they occupied before entry of the Expansion Order and advancement of the challenged receivership actions, even if Appellants ultimately prevail on the merits.

Appellants have warned for more than six months that continuation and expansion of the receivership would not preserve the status quo but instead accelerate harm. As early as November 24, 2025, Appellants advised the district court:

> "[R]efusing to lift the stay does not preserve the status quo; it accelerates harm."
>
> Emergency Motion for Limited Relief from the Receivership Stay, Doc. 128, PageID #5058.

Since that time, Appellants have repeatedly argued that the receivership was causing deterioration in enterprise value rather than preserving it. Appellants presented evidence that the Company remained solvent, that Farm Credit was oversecured, and that the receivership itself was allegedly causing measurable deterioration in sales performance, enterprise value, and restructuring opportunities.

See Motion to Reconsider, Doc. 151, PageID #6079–6080, 6096–6099. Nevertheless, the resulting harms have continued to accumulate while the receivership remains in place.

During that same period, receivership expenses, legal fees, and administrative costs allegedly exceeding $8 million have continued accruing against the underlying debt while the validity, amount, enforceability, and offset-ability of that debt remain unadjudicated. The continuing expansion of costs, restraints, operational disruption, litigation interference, and potential asset dispositions illustrates precisely the type of cumulative and irreversible injury that warrants preservation of meaningful appellate review.

Because the Expansion Order threatens irreparable harm to Appellants' governance rights, litigation rights, restructuring rights, bankruptcy rights, appellate rights, and separate corporate interests—and because those harms may become impossible to unwind if the appeal succeeds—a stay pending appeal is warranted.

**b. The Martha's Vineyard Sale Procedures Threaten Irreversible Consequences and Practical Mootness**

The real property at issue is unique, located at 471 West Tisbury Road, Edgartown, Massachusetts, ( hereinafter the "MV Property").[10] Appellants contend that it is not an appropriate part of the receivership estate and should not be under

[10] The Court indicated that the property address at issue has changed from 10 Codman Spring Road, Edgartown, MA 02539 to the address now listed as 471 West Tisbury Road, Edgartown, Massachusetts, 02539. See, Dkt. Ent. 197, PG ID 7751.

the control of the Receiver. The sale order sets a compressed timetable for notice, overbids, reporting, and a hearing.

The Order states in pertinent part:

> This proposed sale is governed by 28 U.S.C. §2001(b) which provides in full:
>
> > After a hearing, of which notice to all interested parties shall be given by publication or otherwise as the court directs, the court may order the sale of such realty or interest or any part thereof at private sale for cash or other The consideration and upon such terms and conditions as the court approves, if it finds that the best interests of the estate will be conserved thereby. Before confirmation of any private sale, the court shall appoint three disinterested persons to appraise such property or different groups of three appraisers each to appraise properties of different classes or situated in different localities. No private sale shall be confirmed at a price less than two-thirds of the appraised value. Before confirmation of any private sale, the terms thereof shall be published in such newspaper or newspapers of general circulation as the court directs at least ten days before confirmation. The private sale shall not be confirmed if a bona fide offer is made, under conditions prescribed by the court, which guarantees at least a 10 per centum increase over the price offered in the private sale.
>
> 28 U.S.C. § 2001(b).

The Order goes on:

> To that end, the Court hereby **ORDERS** the following:
>
> 1. The Receiver is **DIRECTED** to publish the following notice (or a substantively identical version thereof) in the Vineyard Gazette:
>
> > The Receiver for UN House MV, LLC, Phillip G. Young, Jr., has entered into a sale contract with respect to the real

> property located at 471 West Tisbury Road, Edgartown, MA 02539 (f/k/a 10 Codman Spring Road, Edgartown, MA 02539) and all personal property located therein. The proposed sale price for the property is $2,595,000. Any party wishing to submit an overbid for the property should contact the Receiver in writing at [insert preferred contact method]. Any overbid must be accompanied by proof of the bidders financial ability to purchase the property at the overbid price. The deadline to submit an overbid is June 5, 2026. Overbids received after June 5, 2026, will not be considered.

2. The Receiver shall publish the notice described in paragraph 1 as soon as practicable, but in no event later than **May 22, 2026**. The Receiver shall ensure that the notice is published on the Vineyard Gazettes website (https://vineyardgazette.com/) for **at least ten consecutive days**. The Receiver shall further ensure that the notice is published in the **May 22, 2026**, and **May 29, 2026**, print editions of the Vineyard Gazette.

3. The Receiver's Expedited Motion to Sell Real and Personal Property in Martha's Vineyard [Doc. 147] is hereby set for hearing on **June 11, 2026,** at **2:00 P.M. ET** at the U.S. Courthouse, 800 Market Street, Knoxville, Tennessee.

Since entry of the May 12, 2026 Order, the Receiver has also disclosed a signed Letter of Intent for the sale of substantially all assets, further demonstrating that the

risk of irreversible asset dispositions extends beyond the Martha's Vineyard property alone.

Appellants contend that if the sale proceeds as indicated in the Order of May 12, 2026, the property may be marketed, bidders may rely on the court-ordered process, and later relief may become impracticable or inadequate. As contemplated by the four factors for a stay, the harm to Appellants is imminent, and practical mootness may attach once the sale on the MV Property is allowed to proceed.

**C. A STAY WILL NOT SUBSTANTIALLY INJURE OTHER PARTIES.**

Granting a stay pending appeal will not substantially injure the Receiver, Farm Credit, or any other party. To the contrary, a stay would merely preserve the status quo while the Court of Appeals resolves the serious legal and factual questions presented by this appeal and the overlapping bankruptcy appeal.

The Sixth Circuit has recognized that the stay factors "are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). Likewise, the Sixth Circuit has explained:

> In applying this test, we balance the factors. The Appellant must demonstrate a likelihood of success on the merits to a degree inversely proportional to the amount of irreparable harm that will be suffered if a stay does not issue. '[I]n order to justify a stay of the district court's ruling, the [Appellant] must demonstrate at least serious questions going to the merits and

> irreparable harm that decidedly outweighs the harm that will be inflicted on others if a stay is granted.'
>
> *Family Trust Foundation of Kentucky, Inc. v. Kentucky Judicial Conduct Commission*, 388 F.3d 224, 227 (6th Cir. 2004).

The Receiver was originally appointed to preserve and protect assets. Appellants do not seek through this Motion to dissolve the receivership or eliminate existing protections. Rather, Appellants seek a temporary stay of the Expansion Order pending appellate review of whether the receivership may properly be extended to separate non-operating entities unsupported by the evidentiary record.

There is no evidence of imminent asset dissipation, concealment, operational collapse, or other emergency circumstances that would justify denying a stay. Appellants produced full and complete banking records and financial documentation, including records extending well beyond what was originally requested. Those records revealed no hidden assets, siphoning of collateral, fraudulent diversion, operational commingling, misuse of corporate form, overlapping operations, or alter-ego conduct warranting expansion of the receivership.

Nor is there evidence that GSI itself is dissipating assets, conducting operations, transferring property, or otherwise engaging in conduct requiring immediate equitable intervention. The record instead reflects that GSI is a passive holding company whose principal assets consist of illiquid ownership interests. The

district court itself acknowledged that GSI is "a passive holding and investment entity" and "does not have operations the receivership might disrupt." Expansion Order, Doc. 198, Page ID #7807. A temporary stay of the Expansion Order would therefore preserve the pre-expansion status quo while appellate review proceeds.

Indeed, the very accounts relied upon by the Receiver to support expansion ultimately confirmed that the challenged funds were traceable and used for Uncle Nearest's benefit. The district court acknowledged that "it appears that, at least on the current record, the funds diverted to Grant Sidney flowed back to Uncle Nearest." Expansion Order, Doc. 198, Page ID #7784. The court further recognized that "it appears the MP-Tenn funds were ultimately spent for Uncle Nearest's benefit." Id., Page ID #7805.

The absence of evidence supporting imminent harm is especially significant because the extraordinary harms flowing from continued expansion substantially outweigh any speculative administrative inconvenience associated with maintaining the pre-expansion status quo pending appeal.

That is particularly true because extraordinary equitable remedies must remain narrowly tailored to demonstrated necessity. As the Supreme Court explained:

> the summary remedy by receivership, with the attendant burdensome expense, should be resorted to only on a plain showing of some threatened loss or injury to the property, which the receivership would avoid.

*Gordon v. Washington*, 295 U.S. 30, 39 (1935).

No comparable showing of imminent harm exists here.

Moreover, Farm Credit's collateral position is not meaningfully impaired by a temporary stay. The underlying assets remain in existence and subject to existing Court oversight while the appeal proceeds. Farm Credit has already obtained the receivership relief originally requested and continues to possess the contractual protections, liens, and collateral rights it held before entry of the Expansion Order. The requested stay would merely preserve the status quo pending appellate review of the Expansion Order and the related proceedings concerning the proposed Martha's Vineyard property sale, both of which raise overlapping questions concerning the scope and continuing consequences of the receivership.

Nor would a stay prejudice creditors generally. Preserving meaningful appellate review before additional operational restraints, governance interference, restructuring limitations, and litigation interference occur protects the integrity of the judicial process for all parties involved.

By contrast, denying a stay risks continued expansion of equitable control, impairment of bankruptcy-related rights, interference with restructuring efforts, impairment of separate corporate governance, interference with independent litigation rights, and potential mootness of overlapping appellate issues before meaningful review can occur.

Because a stay merely preserves the status quo while the appellate process proceeds, and because Appellees face no comparable irreparable harm from temporary preservation of that status quo, the balance of equities strongly favors granting a stay pending appeal.

**D. THE PUBLIC INTEREST STRONGLY FAVORS A STAY.**

The public interest strongly favors preserving the status quo while the Court of Appeals resolves the substantial legal and factual questions presented by this appeal and the overlapping bankruptcy appeal presently pending.

This case implicates important public interests concerning the proper limits of federal equitable power, the lawful scope of receivership authority, preservation of meaningful appellate review, protection of corporate separateness, and the orderly interaction between district court receivership proceedings and pending bankruptcy appellate jurisdiction.

The public has a substantial interest in ensuring that extraordinary equitable remedies remain confined to traditional legal limits and are not expanded beyond the evidentiary record supporting them. As the Supreme Court explained:

> Although equity is flexible, in the federal system, at least, that flexibility is confined within the broad boundaries of traditional equitable relief.
>
> *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 322 (1999).

Likewise, the Sixth Circuit has emphasized in the receivership context:

> Rule 66 thus directs courts to rely on traditional practice to determine the powers and limits of the receiver and receivership court. By doing so, the rule codifies the Supreme Court's repeated admonition that, absent legislative change, a federal court's exercise of its equitable powers must fall within the traditional principles of equity exercised by the High Court of Chancery in England at the founding.
>
> *Digital Media Solutions, LLC v. South University of Ohio, LLC*, 59 F.4th 772, 782 (6th Cir. 2023).

Those principles are particularly important where, as here, a receivership has been expanded to reach a separate non-operating holding company despite the absence of completed findings establishing fraud, alter-ego conduct, misuse of corporate form, operational unity, or imminent dissipation of assets. The public has a strong interest in ensuring that extraordinary remedies remain tied to demonstrated necessity and objective evidence rather than inference.

That interest is especially strong here because the Expansion Order itself confirms that additional investigation was still required after expansion. The district court directed the Receiver to "promptly investigate whether and to what extent Grant Sidney, Inc. holds any assets that rightly belong to Uncle Nearest" and to report "whether Grant Sidney, Inc. should remain in receivership or whether other less drastic measures could be used to recover any improperly diverted assets." Expansion Order, Doc. 198, PageID #7814–7815. The public interest is not served by expanding extraordinary equitable control first and determining later whether the expansion was necessary.

The public also has a strong interest in preserving meaningful appellate review before irreversible consequences occur. The Sixth Circuit has recognized that appellate review may become unavailable when, "by virtue of intervening events, the court of appeals cannot fashion effective relief." *Weingarten Nostat, Inc. v. Service Merchandise Co.*, 396 F.3d 737, 742 (6th Cir. 2005). It has likewise recognized that subsequent events may limit appellate review "regardless of the merits of legal arguments raised against it." *In re Nashville Senior Living, LLC*, 620 F.3d 584, 591 (6th Cir. 2010).

That concern is magnified here because overlapping bankruptcy appellate proceedings remain pending while the receivership continues altering the status quo. The bankruptcy appeal directly concerns the scope of authority and interaction between the receivership and bankruptcy process. Yet while that appeal remains unresolved, the Expansion Order and related receivership proceedings, including the proposed Martha's Vineyard property sale, continue advancing in ways that may materially affect bankruptcy-related rights, restructuring options, governance rights, and appellate remedies.

The public also has an interest in preserving respect for corporate separateness absent proof sufficient to justify disregarding it. As the Sixth Circuit recognized in *Lim v. Miller Parking Co.*, 304 F. App'x 416, 424 (6th Cir. 2008), corporate separateness is presumed absent abuse of corporate form, and courts honor that

presumption even where a single individual owns and operates the entity. Preserving appellate review before additional consequences flow from the Expansion Order promotes confidence that established legal standards will be applied before separate corporate entities are subjected to extraordinary equitable control.

That concern is heightened because the district court recognized that GSI is "a passive holding and investment entity" and "does not have operations the receivership might disrupt." Expansion Order, Doc. 198, Page ID #7807. The public interest favors careful adherence to corporate separateness and equitable limits before a separate passive holding company is subjected to ongoing receivership control.

Moreover, granting a temporary stay does not threaten public safety, public access, or ongoing public operations. The requested relief simply preserves the status quo while the appellate courts determine whether the Expansion Order exceeded permissible equitable limits, whether the findings supporting expansion are supported by the record, and whether continued expansion of equitable control is consistent with traditional principles governing federal receiverships.

Preserving confidence in the integrity, restraint, and reviewability of extraordinary judicial remedies is itself a substantial public interest.

Accordingly, the public interest strongly favors granting a stay pending appeal.

Relief is Needed to Prevent the sale of the Appellant's Property

The publication of a notice of sale pursuant to 28 U.S.C. § 2001(b) is not a procedural formality without consequence. These concerns are no longer limited to the Martha's Vineyard property. The Receiver has disclosed a signed Letter of Intent for the sale of substantially all assets and has represented that execution of a formal Asset Purchase Agreement is anticipated within approximately forty-five (45) days, further increasing the risk that appellate review could be overtaken by irreversible transactions. Once publication occurs and the sale process advances into the marketplace, third-party reliance interests begin attaching immediately, the proposed transaction gains momentum, and the risk of irreparable harm substantially increases. Other federal courts have repeatedly recognized, in both bankruptcy and receivership contexts, that unwinding a substantially advanced sale process becomes increasingly difficult as reliance interests develop and transactions progress.

As the Seventh Circuit explained: Two factors are key to resolving the receiver's motion: (1) the legitimate expectations engendered by the plan; and (2) the difficulty of reversing the consummated transactions. *SEC v. Wealth Mgmt. LLC*, 628 F.3d 323, 332 (7th Cir. 2010). Likewise, the Eighth Circuit recognized that once foreclosed property is sold to a *bona fide* third-party purchaser, a court generally lacks the power to craft an adequate remedy; therefore, a party who fails to obtain a stay of the sale has no remedy on appeal and the appeal is moot. *United*

*States v. Fitzgerald*, 109 F.3d 1339, 1342 (8th Cir. 1997). Such concerns are especially significant here, where the proposed sale involves a unique property directly tied to the Company's brand identity and enterprise value, and where the legal authority underlying the Receiver's continued exclusive control remains the subject of an active appellate proceeding currently proceeding on an expedited basis.

## VII. REQUESTED RELIEF

Appellants, Fawn Weaver, Keith Weaver and Grant Sidney respectfully request that this Court:

1. Enter an immediate administrative stay of the May 12, 2026 and May 26, 2026 Orders of the District Court;

2. Immediately stay implementation of those portions of the May 26, 2026 Order expanding the receivership to Grant Sidney;

3. Immediately stay implementation of the order directing publication, overbid procedures, reporting, notice, and hearing on the proposed MV property sale;

4. Prohibit the Receiver, pending further order of this Court, from taking further steps toward marketing, overbid solicitation, sale approval, transfer, or other asset-sale activities involving the MV property substantially all assets of Uncle Nearest and related entities, or other receivership assets; and

5. Grant any and all other relief this Court deems just and proper.

In conclusion, the Appellants respectfully request that the Court preserve the status quo by staying further implementation of the challenged Orders pending meaningful appellate review.

Respectfully Submitted,

**JOHNSON & JOHNSON, P.C.**

*/s/Curtis D. Johnson Jr.*

Curtis Johnson (TN BPR No. 015518)
1407 Union Avenue, Suite 1002
Memphis, TN 38104
Telephone: (901) 725-7520
cjohnson@johnsonandjohnsonattys.com
fjohnson@johnsonandjohnsonattys.com

*Counsel for Appellants, Fawn Weaver, Keith Weaver and Grant Sidney, Inc.*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 4,363 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Sixth Circuit Rule 32(b)(1).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using **Microsoft Word** in **14-point Times New Roman** font.

Dated: June 2, 2026
Memphis, TN

/s/ Curtis D. Johnson
Curtis D. Johnson
*Counsel for Appellants, Fawn Weaver*
Keith Weaver and Grant Sidney, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on June 2, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: June 2, 2026
Memphis, TN

/s/ Curtis D. Johnson
Curtis D. Johnson
*Counsel for Appellants, Fawn Weaver Keith Weaver and Grant Sidney, Inc.*